Part-time Faculty Association v. Columbia College Good morning, your honors, counsel, judges. There's three basic points that I want to make in this case that show that this arbitration award has to be enforced and the decision the district court reversed. The first is that the college consented to the arbitrator's jurisdiction to interpret the recognition clause and the scope of the bargain unit, that's what the recognition clause covers, is a lawful subject of bargaining. Second, the arbitrator did nothing more than interpret that contract. He interpreted Article 1 of the collective bargaining agreement. And third, the contract as interpreted by the arbitrator is lawful. That is, it doesn't violate any positive law. And if we know anything about arbitration, as the Supreme Court reminded us just last week, the overarching policy in favor of the finality of arbitration, is that if the arbitration, if the arbitrator interprets the contract, and if the contract as interpreted doesn't violate any positive law, a court has no option but to enforce it. And that, those three simple things, are all you need to know about this case. So we don't even need to know anything about what the NLRB did? Well, if the NLRB was interpreting the National Labor Relations Act, that would be one thing. That is the interesting twist of the case, Judge Hamilton. But here, under this primary jurisdiction argument, it's clear that the Labor Board wasn't exercising any primary jurisdiction. What was it doing? It offered a contract interpretation. That's what the district court said, Your Honor. It said, the director, like the arbitrator, concluded that the CBA was ambiguously silent on the subject of the FTST representation, Record 592. It said PFAC's premise that the arbitrator's decision rested on a foundation of contract interpretation, while the director's did not, is simply fiction. Again, Record 592. And the district court said, the NLRB has expressly rejected on the grounds of both contract interpretation and public policy. That's at Record 595. Now, if the regional director was exercising his primary jurisdiction over questions concerning representation, something else would have happened. We would have had a unit clarification. We would have had an election ordered. We would have had some change to the Recognition Clause language. We would have had some change to the original scope of the unit that dates back to 1998. We had none of those things. Instead, what we had was a dismissal. And remember how this case got to the National Labor Relations Board, was on a self-determination election petition. Wasn't a unit clarification or anything else. Self-determination election petition. And the result was, that petition was dismissed. Your client was a party to that proceeding before the regional director? Yes, Your Honor, and for the record, that proceeding is a, quote, non-adversarial fact-finding proceeding. How long did the hearing take? Eight days. I believe it may have been a little bit more. Did your client have a right to seek review before the board? That's an interesting question, because it did have that right, and we did file an appeal. But in a doctrine that will be no doubt familiar to this court, the Labor Board dismissed that appeal because it says you don't get to appeal reasoning, you can't appeal reasoning, because the outcome was exactly what my client sought. A dismissal. It dismissed the appeal. And that's where you get into this confusing stuff in the record about the position of the Labor Board. Who, Your Honor, is a party to this case? They moved to intervene. They were granted that leave to intervene. And when they were in front of Judge Tharp, their attorney said that the Labor Board itself had not had cause to pass on the issue of the unit inclusion. So when you get to, and that's important for a very specific reason, it's important because what is the final order is the dismissal. But what is not final is some, and has no imprimatur of a final decision of an administrative agency interpreting the scope of its organic statute entrusted to it by Congress, is whether these people are, as a matter of contract law, in this unit. And along with that, Judge Hamilton, is the idea that the scope of the unit is a permissive subject of bargaining. That is, it is lawful for my client and the Columbia College Chicago to negotiate over the scope of the unit as expressed in their contractual recognition clause, just as it is lawful for them to negotiate over other things, such as wages, such as benefits. It's just as lawful for them to negotiate over the scope of the unit. And that's in one of four cases that we've cited that have gone undistinguished. The Telex case. Telex case stands for the proposition that the concurrent jurisdiction of the Labor Board does not deny parties the right to arbitrate contractual disputes that may affect representation. The Hillaram case, Your Honors. In Hillaram, that this court, the Seventh Circuit, recognized that the scope of the unit is a permissive, lawful subject of bargaining. The third case that's gone undistinguished is the American Postal Workers case. It's a DC Circuit case and an Eighth Circuit case that go along with it, that say the arbitrator's determination of the issue before him is given the same deference as any other contract interpretation he makes. And the fourth case that gets undistinguished is the HK Porter case from the US Supreme Court that tells the Labor Board it can't go and dictate the substantive outcome of collective bargaining agreements. And that's exactly what the regional director tried to do in this case. The parties had a contract that unequivocally, based on their past practice, excluded these employees. They saw it to be recognized in the unit and the CEO, the employer CEO, wrote back saying, you are not in this unit. We won't recognize you as in this unit. And for whatever reason, the region decided they didn't like that substantive contract outcome and they tried to bully and they tried to force the parties to put these employees into the unit. And even more disturbing, Your Honor... Why isn't the response to that, though, the appeal to the board? We did appeal to the board but they dismissed it because we can't appeal the reasoning. Now ultimately we've preserved that appeal for any future enforcement actions against my client and subsequent unfair labor practice prosecution. So that issue is still preserved for appeal, but in that administrative posture, the Labor Board would not hear a challenge to the reasoning that was inside the ruling because we can't appeal the dismissal because that's what we sought. And if you want to look for... there's a case a few years ago, Marc Atante v. City of Chicago, there's a Seventh Circuit case that talks about how you don't get to appeal the outcome. You don't get to appeal the reasoning. You don't get to appeal outcomes. I think that's not an uncommon idea. Your Honors, you know, there's just no precedent that anyone has cited. And we the courts have deferred to a contract interpretation made by the regional director over a contrary contract interpretation made by an arbitrator. And if you have any question that the arbitrator was engaged in a contract interpretation, please let me know. If you have any question that the regional director was engaged in a contract interpretation, please let me know. But the basis of Judge Tharpe's ruling was clear that both those things were happening. As I previously argued in citing the record 592 and 595, the district court's decision was based on the idea that the regional director offered a contract interpretation. And when you look at that decision at record 590 and 591, it's clear that the arbitrator was only engaged in a contract interpretation. Judge Tharpe wrote, quote, while the arbitrator certainly limited the rationale for his ruling to his interpretation of the contract, that's at record 590, it continued at record 591. And that is all the arbitrator did. Having defined the unit to exclude FTST, the employees, the many issues and complaints PFAC had actually raised in its grievance, representation among them, were moot. This just comes down to contract arbitration by an arbitrator. The college unequivocally consented to the arbitrator's interpretation of Article 1, the Recognition Clause, and that controls the scope of the unit. They consented to that without objection. As a result, the arbitrator was acting within his authority to when he interpreted Article 1 and said, Article 1 is ambiguous. I'll look to your past practice. Under the past practice, including the letter from the employer's own CEO saying that these people weren't in the unit and would not be recognized in the unit, he interpreted Article 1 to exclude those people from the unit. And when we look at U.S. Supreme Court precedent Eastern Coal case and going backwards to the Steelworkers Trilogy, we know that an arbitrator's interpretation of a contract is the party's agreement because that's what they asked for. They go to him for one thing and one thing only, interpret our contract. That's what the arbitrator did here and when he interpreted the contract, he interpreted it as excluding these people. When I look at this, when I look at this case from kind of a prudential perspective of arbitration and the public policy exception, which I'll come to in a minute, your honors, the only way to get around the arbitrator's decision is to say that the scope of the unit is an illegal subject of bargaining. And that just runs right against the Hillaram case. This court's precedent that says unit scope is a permissive subject of bargaining. The employer and the union get to bargain over it. I'm not sure I accept the premise there, Mr. Persone. What's wrong with simply saying the election petition put several issues in front of the regional director. The regional director decided, rightly or wrongly, about the scope of the bargaining unit and if there was an error in that, the remedy is with the board rather than to try and end the run through arbitration. The answer to that is consent to arbitration and permissive subject to bargaining, Judge Hamilton. I'm sorry? Consent to arbitration and permissive subject to bargaining. Even if, and I don't think he was, but even if the regional director was acting within his authority to say who's in the unit right there in the manner in which he did. And there's other ways he could do it lawfully through a unit clarification. They can do that today. They've refused to follow their own rules. But even if he was permissive for the parties to negotiate for a different outcome. And that's what they did. They just negotiated for it by arbitration rather than through an MOU or collective bargaining. And that's the importance of the Eastern Coal case in the Supreme Court, Judge. When you come to public policy, frankly I think Judge Tharp is a wonderful judge. I think he dropped the ball on public policy because we know from MISCO, WR Grace, and cases like that, that say if you're going to reverse an arbitration award for public policy, it basically has to be clear, well-defined, dominant expression of law. And that's just not what the district court pointed to. The district court pointed to two things. First, an enforcement of an arbitration award that purports to resolve a representational issue consistently with an NLRB ruling as that same representational issue violates public policy because it infringes on the in Section 9. Well, that's just not true because it's a subsequent agreement of the parties over a permissive subject to bargaining. The second point is even further from public policy. District Court wrote, it further violates public policy to force Columbia College, like Odysseus, between Sylla and Sherbetus by requiring it to comply with two irreconcilable orders. That's not any statement of positive law. That may be a statement of personal fairness, but it's not a statement of any positive law that's violated by this contract as interpreted by the arbitrator. I'd like to save my time for rebuttal, Your Honor. Thank you, Mr. Pearson. Mr. Barber? Good morning. Please, the court, counsel. Let me just begin by pointing out, I think, as a starting point that this case involves three very well-settled exceptions to the general principle that courts defer to arbitration awards. And Judge Tharp, in his decision below, I think laid out those principles. And I really don't think there's any disagreement about what they are, but I think counsel really has put a spin on this, and he's created several red herrings, I believe. But Judge Tharp, for example, first found that the arbitration award in this case directly conflicted with the decision that was made by the regional director, later affirmed by the full board in Washington when it denied the request for review, and that based upon the primary jurisdiction doctrine, because the arbitration award conflicted with the decision made in the that this disputed category of staff employees, FTST, were and always had been part of the PFAC bargaining unit, that because that conflicted with the later decision from the arbitrator, finding that the parties had, by past practice, excluded this category, that under the primary jurisdiction doctrine, the arbitration award had to be vacated. He secondly found that the parties had not authorized the arbitrator to decide the representation issue, and he thirdly found that the arbitration award violated public policy because it didn't allow the jurisdiction of the labor board to decide these issues. If we apply Occam's razor, that public policy rationale, that really doesn't seem to add anything to primary jurisdiction, does it? It really doesn't add anything. I think those two are very closely related. And so then on the second rationale about what the parties had authorized, Yes. arbitrators usually have a fair amount of discretion to kind of interpret the issues as framed for them by the parties, right? That is correct. And if there had been no board decision in this case, would there really be anything to object to about the arbitrator's award? I think not. I think not. So really down to just the primary jurisdiction rationale, right? Well, but it still goes to the authority of the arbitrator, and I don't think you can simply ignore the fact that the labor board did make a decision in the party's submissions to the arbitrator. First of all, even though an arbitrator does have some latitude and discretion, he is governed by what the parties submit to him. And it was clear both in the grievance and in the briefing to the arbitrator that PFAC expressly disavowed any intention whatsoever to have the parties revisit that issue concerning the unit placement of the FTST employees. And it was very clear from the briefs. In fact, counsel represented that PFAC would indeed abide by the decision of the NLRB regional director as long as it remained the ruling in the case. And in fact, when the labor board denied the request for review, it wasn't a dismissal of an appeal. It was a denial of the request for review. And it's clear, both under the labor board's rules and regulation and under labor board case law, as well as case law in this circuit, that the effect of And as a result, the arbitrator simply could not ignore that decision, regardless of what basis he used. Even if he was interpreting a contract, the collective bargaining agreement, and the regional director was doing something different, it doesn't make any difference how they got there. The fact is that the labor board made one decision on the representation issue that the FTSTs were and always had been in the unit. And, in fact, he also said that any agreement by the parties to the contrary would violate board policy. Counsel simply ignores that fact. And, in fact, there was no agreement by the parties. The status of these employees had always been the same. The parties didn't negotiate over this. The unit description had been in place for years and never changed, either before or after. In addition, I think the issue concerning whether it's a permissive subject to bargaining really has no relevance whatsoever here. Well, counsel, suppose instead of this arbitration going on while, I mean parallel with the NLRB appeal process, suppose 10 years had passed since the regional director's decision and the parties presented these problems to the arbitrator. And the arbitrator said, well, look, I know what the regional director decided 10 years ago, but there's been a course of conduct and I think things have changed. Any problem with that? No problem with that if, in fact, for example, the party can show a change of circumstance because I think there would have to be some showing, not simply just based upon pure passage of time, but based upon a course of dealing or a change in duties or whatever, that the facts and the circumstances were not the same as they were at the time the labor board made the representation decision. Are there variations between the, I guess, the part, what do you call it, is it part-time staff or part-time teach? It's full-time staff. Full-time staff. Who teach part-time. And then they teach maybe one course or something. Yes. Are they very commonly identified? Is this a narrow group or is it? Is it common among the staff to teach one course? Yes. In fact, there are really several different categories. For example, and this is, I think, spelled out in the record and in the regional director's decision, but there is a category of full-time staff who teach as part of their staff responsibilities. And it's clear with that category that they have always been excluded. Then there's this group that we're talking about, and I believe the record shows that there's somewhere between 50 and 75 of them who are full-time staff who teach part-time. Then there's yet another group of part-time staff who teach part-time. They've always, always been in the unit represented by PFAC, and there's never been an issue about them. And really there's no difference whatsoever in terms of the duties they perform, et cetera. There must be a difference in what they get paid. Pardon? There'd be a difference in what they get paid, wouldn't there be, or maybe not? I don't know. I don't think so. Not for their teaching. Not for their teaching. There's a difference in how they're selected, and that's really what the real dispute was or was supposed to be that was presented to the arbitrator. It was certainly the college's understanding. The dispute was whether or not the college violated the collective bargaining agreement by assigning the same seniority rights to this disputed category of FTSTs after the regional director's decision. Well, what's commonly known in a lot of places are adjunct teachers. Correct. They're just brought in, maybe lawyers teach one course in law school and then go on practicing law. These are people who are clearly part of the whole school as staff, and you've just described some variations there that are curious. Yes. How they distinguish each other. Right. This is why it makes it a lot easier if you look at what the NLRB does. Exactly, and in fact, what the NLRB did, and I believe there was a slight misstatement. I think it was actually a 12-day evidentiary hearing before the regional director, complete record. Whereas the record in the arbitration proceeding, it was based upon a stipulation. There wasn't even an evidentiary hearing, and the regional director was exhaustive, and he was, in fact, applying his statutory authority. He wasn't interpreting a contract. In order to decide the issue in that representation case, the petition for an election, he had to decide whether or not this disputed category was in the PFAC unit or not in order to determine whether the collective bargaining agreement barred a petition. So when he made that decision, he had to in order to carry out his statutory responsibility to decide that representation case. And when that happened, and when the full labor board in Washington denied PFAC's request for review its appeal, that became final, and the intervening conflicting award from the arbitrator. And by the way, the labor board in Washington, they were aware of the arbitrator's decision when they denied review, because, in fact, it was PFAC who called the labor board's attention to the arbitration award, but that had no effect on the outcome. The labor board denied review. That was an affirmance of the regional director's decision. So it was a final determination from the labor board. And Cary versus Westinghouse, we think, is the controlling authority, both with respect to the issue about primary jurisdiction, the fact that the labor board's decision is superior to and overrides the contrary arbitrator's award. And there's no dispute that clearly they reached entirely conflicting polar opposite results. No question about that on this central issue. And there was no way the college could comply with both. And in terms of the public policy at issue, I think Judge Tharp was very, very careful in his decision to make it clear that the policies at issue were the primary, they all stemmed from the primary jurisdiction of the labor board. And that was central to his ruling, both with respect to the first issue, the fact that they conflicted, and with respect to the third issue based on public policy. And there's a line of cases from this court, Yellow Freight being one of them, that clearly followed that same principle that set forth in Cary versus Westinghouse. And I don't think PFAC has ever really explained why that line of cases doesn't control the result here. Okay? Thank you much, Your Honor. Thank you, Mr. Barber. Yeah. Mr. Pearson? Good morning again, Your Honor. I'll tell you why those cases don't hold any water. Because in none of those cases did the company consent to arbitration over a permissive subject of bargaining. When we talk about Cary v. Westinghouse, they actually compelled arbitration. When we talk about Yellow Freight, Yellow Freight involved a proper exercise of the labor board's primary jurisdiction because they had a unit clarification, which never happened here. The key holding in Yellow Freight was, quote, therefore we hold that the regional director's decision that the mechanics employed by Yellow Freight at the Bedford Park Terminal do constitute a separate and distinct unit is sufficient to dispose of IAM's grievance. The same, the regional director disposed of it. Here he didn't dispose of it because they consented to a later in time arbitration. Cary v. Westinghouse, as I talked about, ordered arbitration. Advanced Cast Stone, there was a 10-K hearing, which resolves jurisdictional disputes between two unions. And the employer contested arbitrability. Smith Steelworkers v. A.O. Smith, the union sought direct review of agency action in district court, which there's no jurisdiction for. And also the outcome was that the court refused to compel arbitration, not reverse a voluntarily consented to arbitration. Local 7210 v. Union Tank Car. The NLRB held the union did not represent the workers, and therefore the contract interpretation could not apply to them because they were strangers to the contract. And in Local Union 204, there wasn't even an arbitration, Your Honors. So what's the employer supposed to do in the face of the NLRB order and the arbitration award? What they should have done is not agreed to submit to an arbitration of Article I. That's what they had to do. Now, back up. They're facing conflicting orders, right? Yes, Judge. What are they supposed to do? Honor their promise that they made in collective bargaining. And disregard the NLRB order? Yes. Interesting. What would the action be? I don't know. You know, it's completely hypothetical what the Labor Board would have done if they had done that. Because going back to H.K. Porter, what's clear to me is that the Labor Board refused to follow and refused to exercise its primary jurisdiction. Because if it was exercising its primary jurisdiction, it would have taken the interveners who aren't here today, the FTST employees, it would have taken them up on their motion to convert the self-determination election petition to a unit clarification. They would have had to have a unit clarification, which would have been a proper exercise of its statutory authority. It refused to do that. It refused to order an election. Remember this, Judge Mannion, these employees petitioned for a self-determination election. They were never given the opportunity to have an election to actually voice an opinion as to whether they wanted to be represented by PFAT. There was never an election. That is a disturbing fact and a disturbing deviation from national labor law. And I want to leave you with one last citation to a different provision of labor law. 29 U.S.C. Section 173D states that the, quote, desirable method for resolving labor disputes is, quote, final adjustment by a method agreed upon by the parties. That method in labor law is always arbitration. I see I'm over time unless there's any more questions. Thank you. Thank you, judges. Thanks to all counsel. Case is taken under advisement. And the fourth case is Milliman v.